Diane **ABBEY** et ano., as Trustee under Agreement of Trust Dated July 22, 1978 f/b/o Leslie Ann Abbey and Jonathan D. Abbey, Plaintiff,

v.

**COMPUTER & COMMUNICATIONS TECHNOLOGY CORP.,** Everett T. Bahre, Robert J. Leaver and William Hambrecht, Defendants.

Court of Chancery of Delaware, New Castle County.

Submitted: Jan. 6, 1983.
Decided: Jan. 17, 1983.

---

Joseph A. Rosenthal, and Kevin Gross, of Morris & Rosenthal, Wilmington, and Arthur N. Abbey, and Philip R. Brookmeyer, of the Law Firm of Arthur Abbey, New York City, for plaintiff.

William O. LaMotte, III, and Marguerite A. Conan, of Morris, Nichols, Arsht & Tunnell, Wilmington, for defendant Computer & Communications Technology Corp.

Robert K. Payson, of Potter, Anderson & Corroon, Wilmington, for individual defendants.

BROWN, Chancellor.

This action was filed derivatively pursuant to Chancery Rule 23.1 on behalf of the defendant Computer & Communications Technology Corp., a Delaware corporation (hereafter "CCTC"). Plaintiff is a shareholder of that corporation. On behalf of the corporation she seeks to recover against the individual defendants for illegal profits allegedly realized by them as a result of trading in the stock of the corporation based upon inside information. The named individual defendants are Everett T. Bahre, the President and director of CCTC; Robert J. Leaver, Vice President and General Counsel to the corporation; and William Hambrecht, a director and general partner in the firm that serves as an investment banker for CCTC.

The complaint was filed on September 2, 1982. On October 5, 1982 the defendants moved to dismiss the complaint on the grounds that the plaintiff had failed to comply with Rule 23.1. Alternatively, the defendants moved to stay all further proceedings pending the report of a special Litigation Committee appointed by the board of directors of CCTC to investigate the charges of wrongdoing alleged in both the complaint and in a prior letter whereby the plaintiff, before filing suit, had demanded that the corporation take action

against the individual defendants to recover their allegedly ill-gotten profits. This is a decision on reargument of that motion, certain aspects of the original ruling of the Court having proven unsatisfactory to the defendants.

The uncontroverted facts are that by letter dated August 13, 1982 counsel for the plaintiff wrote to the corporation and charged that over a period of time ranging from January 19, 1982 through May 24, 1982 the defendant Bahre had sold a total of 50,000 shares of CCTC stock, the defendant Leaver 28,000 shares and the defendant Hambrecht 15,000 shares of CCTC, at prices ranging from $21.00 to $24.50 per share, when at the time, by virtue of their respective corporate positions, they possessed knowledge of information which, when it became public knowledge shortly thereafter, caused the market price of CCTC stock to drop to $10.00 per share. The letter set forth the dates and the amounts of the various sales as well as a compilation of the information allegedly known by the individual defendants which, when it became public knowledge, allegedly caused the price of CCTC shares to drop. The letter concluded as follows:

"Demand is hereby made upon CCTC's Board of Directors to commence litigation on CCTC's behalf to recover for CCTC the profits made by the selling shareholders as a result of their sales with publicly non-disclosed information.

"Unless such litigation is commenced within ten days from the date of this letter, we will commence such litigation on behalf of CCTC."

This letter was received at the corporate offices of CCTC on August 17, 1982. By letter dated the following day, August 18, 1982, the Assistant Secretary of the corporation responded as follows:

"We are in receipt of your letter dated August 13, 1982. The subject matter thereof is undergoing review; however, the General Counsel for CCT is on vacation until September 7, 1982. We shall complete our review and be in contact with you shortly after his return."

On September 2, 1982, there having been no communication between the plaintiff and the corporation during the intervening period, plaintiff filed this suit. With regard to the requirements of Rule 23.1,* the plaintiff alleged in her complaint as follows:

"5. Plaintiff made demand on the Board of Directors of CCTC to take appropriate legal steps to recover from the individual defendants, who have breached their fiduciary duties, the amount of their profits from sales of CCTC shares obtained when said defendants sold their shares while in possession of material non-public information concerning CCTC.

"6. The Board of Directors has failed to act on plaintiff's demand other than to inform plaintiff's counsel by letter dated August 18, 1982 that the subject matter is under review and that defendant, Leaver, who is general counsel to CCTC, is on vacation."

As of the time that the suit was filed the next regular meeting of CCTC's board was scheduled for late October, 1982. However, in response to the demand letter of the plaintiff and the institution of the present action, a special meeting of CCTC's board of directors was called on September 26, 1982 for the purpose of considering what action, if any, should be taken. As a result the board adopted a resolution deeming it to be in the best interests of the corporation "to have a committee comprised of an inde-

---

* In relevant part, Rule 23.1 reads as follows:
"In a derivative action brought by one or more shareholders ... to enforce a right of a corporation ... the corporation having failed to assert a right which may properly be asserted by it, the complaint shall allege that the plaintiff was a shareholder ... at the time of the transaction of which he complains or that his share ... thereafter devolved on him by operation of law. The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors ... and the reasons for his failure to obtain the action or for not making the effort."

pendent director to investigate said demand and the Litigation and to determine whether the corporation should bring an action against said [individual defendants.]"

To this end the composition of the board of directors was, by resolution, increased by one member and Peter Zinsli, a person allegedly having no previous association or affiliation with CCTC, was appointed to fill this new directorship. The resolution further provided as follows:

"RESOLVED, FURTHER, that said Peter Zinsli is hereby appointed as a Litigation Committee to conduct, or cause to be conducted, such impartial review, analysis and further investigation of the circumstances surrounding all matters referred to, or which may be referred to, in the demand and the Litigation, or in any other action which is based in whole or in part upon a common nucleus of operative facts, as the Committee shall deem to be necessary or appropriate in order to determine whether or not the corporation shall undertake any litigation against one or more of the directors or officers of the corporation or against anyone else in respect thereof, and in connection with such impartial review, analysis or further investigation, to appoint independent counsel to the Committee and authorize the payment of the legal fees of such counsel, *and to make and report its findings and determinations to the board of directors, which findings and determinations shall be final and not subject to review by the board of directors and in all respects shall be binding upon this corporation.*

"RESOLVED, FURTHER, that the Committee shall undertake and supervise any action necessary and appropriate to implement any such findings and determinations." (Emphasis added.)

Mr. Zinsli immediately retained separate counsel and set about his duties as a Litigation Committee of one. Several days thereafter, the corporation (through its present counsel and not through the attorneys retained by the Litigation Committee), along with the individual defendants, jointly filed the present motion to dismiss for failure of the plaintiff to comply with Rule 23.1 or, alternatively, to stay all proceedings in this suit, including discovery, pending the investigation and report of the Litigation Committee.

### *As To The Corporation's Motion To Dismiss*

On behalf of the corporation it is contended that the situation is not one in which a demand upon the board of directors was excused in the first instance. The best evidence of this is said to be the fact that plaintiff actually made a demand prior to filing suit. This being the case, it is argued that the board of directors is entitled to a reasonable time to investigate the charges and to make a response. Until the board is afforded such a reasonable opportunity to respond, a shareholder making the demand has no standing to commence derivative litigation on the corporation's behalf. *Hawes v. Oakland,* 104 U.S. 450, 26 L.Ed. 827 (1882); *Nussbacher v. Continental Illinois Bank & Trust Co.,* 518 F.2d 873 (7th Cir.1975), cert. denied, 42 U.S. 928, 96 S.Ct. 1142, 47 L.Ed.2d 338 (1976); *Mills v. Esmark, Inc.,* 91 F.R.D. 70 (N.D.Ill.1981); *Siegal v. Merrick,* 84 F.R.D. 106 (S.D.N.Y. 1979).

On behalf of CCTC it is pointed out that plaintiff's demand letter was acknowledged promptly and that she was put on notice that she would receive an answer to her demand within a reasonably short period thereafter, with the reason for the delay being disclosed. It is contended that the corporation could scarcely make a meaningful response to the demand until it had an opportunity to confer with its General Counsel, especially since he was also named as one of the three alleged wrongdoers. Moreover, it is contended that since the nature of the charges involved no loss to the corporation, and particularly no continuing wrong to the corporation, there was no need for haste on plaintiff's part.

Under these circumstances it is argued on behalf of CCTC that plaintiff had no right

to commence her derivative action based on the allegation that CCTC's board of directors had failed to act on her demand. Accordingly, it is argued that as of the time that the suit was filed plaintiff had failed to show justification for bringing an action on the corporation's behalf under the requirements of Rule 23.1 and that as a consequence the suit should be dismissed.

Plaintiff's answer to this is that once she was advised by the corporation's letter of August 18, that her demand for action would be turned over to the corporation's General Counsel, one of the three persons that she was asking to have sued, it would have been ludicrous to await for some indefinite period thereafter for the unfavorable response that could be reasonably anticipated. She suggests that this reaction on behalf of the corporation demonstrated that her demand was futile. Nonetheless, she points out that she still delayed for more than two weeks from the date of her demand letter before actually filing the suit. Therefore, she disputes the claim that her suit was precipitous and improperly brought.

In the view I take of the matter, I find it unnecessary to determine CCTC's motion to dismiss on the basis of the foregoing arguments. I take this position as a result of the recent decision of the Delaware Supreme Court in *Zapata Corp. v. Maldonado,* Del.Supr., 430 A.2d 779 (1981).

*Zapata Corp. v. Maldonado* dealt specifically with the question of whether a committee of independent directors had the power to cause a pending derivative suit to be dismissed in a context wherein a prior demand on the board of directors was excused. The Supreme Court, subject to certain standards and guidelines set forth in the decision, held that a truly independent committee had such power. The discussion in that case assumed as a starting premise that in a situation wherein a demand on the board of directors is properly excused, a shareholder does possess the ability to initiate the action on the corporation's behalf. The question was whether, once initiated, the plaintiff shareholder had an absolute right to maintain the suit in the face of the power given to the board of directors by 8 *Del.C.* § 141(a) to manage the business and affairs of the corporation.

*Zapata* held that the power given to the board was predominant. It held that even in a case where demand was excused and the initial decision of whether to litigate was not placed before it, the board of directors still retained all of its corporate powers concerning litigation decisions. Where the board was tainted with apparent self-interest under the allegations of the complaint, it was held that the problem was one of member disqualification. The underlying power to terminate the suit remained. The method of exercising that power was, of course, another thing.

In this latter respect the *Zapata* decision went on to hold that even where a board of directors was tainted with obvious self-interest, it nonetheless had the power under 8 *Del.C.* § 141(c) and 8 *Del.C.* § 144 to delegate its authority to a committee of disinterested directors, i.e., those unaffected by the disqualification factor, to determine whether the pending suit brought on behalf of the corporation should be maintained or whether it was in the best interests of the corporation to have it discontinued.

The *Zapata* decision then went on to set forth a new procedure whereby such an independent litigation committee could, in its own right in the name of the corporation and independent of the views of the remaining members of the board of directors, cause a motion to be brought on before this Court seeking the dismissal of the pending suit. In such a circumstance, and pursuant to the guidelines established by the Supreme Court, this Court was then given the power to grant or deny that motion, hopefully without passing on the evidentiary merits of the cause of action alleged in the derivative complaint.

The significance of the *Zapata* decision to the present situation is, I think, as follows. As I see it, *Zapata* permits such an independent committee rather than the board of

directors to speak on behalf of the corporation in this Court. It sets up a special procedure to permit such an independent committee to do so. This special right and procedure is available, however, only in a situation where, because of some alleged self-interest, the board of directors is disqualified from acting itself. Otherwise, but for the disqualifying self-interest factor, the board could make its decision for itself, whether it chose to do so through a committee or not, and cause an appropriate motion to be made on behalf of the corporation just as in any normal suit in which the corporation was named as a party defendant.

To illustrate, in a case involving no alleged director self-interest in which a derivative suit was brought on the basis that a demand had been made and wrongfully refused, the board, whether acting as a unit or through a special committee given the authority to make the decision, could cause a motion for dismissal to be made through corporate counsel. In such a case there would be no need for the special procedure now established by *Zapata* because there would be no reason for this Court to hold a special hearing to determine the independence and good faith of the committee as potentially affected by any personal interests of other members of the board of directors.

In other words, the *Zapata* decision, as I read it, permits a board of directors to delegate the decision on whether or not to dismiss or pursue a pending derivative action to an independent committee of directors, and permits the independent committee to thereafter initiate a special procedure before this Court in the name of the corporation, only in situations wherein a derivative action is filed on the basis that the board of directors is disqualified from passing upon a demand for action by a shareholder. In other words, in a situation wherein a shareholder may reasonably be excused by the circumstances alleged in his complaint from expecting the board to act favorably on his demand.

With this in mind I cannot overlook the fact that the CCTC board met in special session on September 26, 1982 for the very purpose of deciding what to do about both the plaintiff's demand letter and the pending derivative action filed by her and, as a result, adopted a resolution creating the Litigation Committee, giving it full, complete and binding authority to make the decision as to whether or not the suit should be maintained or terminated, and further, giving it the authority to take whatever action it deemed appropriate to implement its decision, including necessarily the authority to move for a dismissal in this Court under the *Zapata* procedure. That this latter is so is evidenced by the present alternative motion which asks that all proceedings in this suit be stayed pending the investigation and report of the Litigation Committee.

Under the facts of this matter I feel that by divesting itself of any power to make a decision on the pending suit, and by adding a new and independent director and by designating him as a special Litigation Committee of one with the final and absolute authority to make the decision on behalf of the corporation, the incumbent board of directors, in effect, conceded that the circumstances alleged in the complaint justified the initiation of the suit by the plaintiff. This is so because the incumbent board opted for the possible use of the new *Zapata* procedure and, as I read *Zapata*, that procedure necessarily presumes a suit properly initiated by a shareholder.

What the board of directors is purporting to do here, as I see it, is to delegate a final corporate decision as to the merits of suit to the Litigation Committee while attempting to reserve the right to raise technical and procedural defenses to itself. I do not think that this should be permitted. I feel that the board should be required to either fish or cut bait. To do what it is attempting to do here is to avail itself of the *Zapata* decision so as to provide the corporation with two different sets of decision makers and two different sets of attorneys to rep-

resent the interests of the corporation in the same case. The *Zapata* decision portends of any number of new procedural complications at the trial level as it is. Whenever the opportunity presents itself, I feel that the trend should be to attempt to minimize rather than to expand them.

Had CCTC's board of directors caused the corporation to move to dismiss the suit for failure of the plaintiff to comply with Rule 23.1, and had it at the same time merely appointed a committee to investigate the allegations and to report back to the board for whatever action the board might choose to take on the merits of the charges, it would be one thing. In such a case the board would not be surrendering the ultimate decision on the worthiness of the alleged cause of action to a committee of independent directors. In such a case, the board would not be empowering the committee to invoke the new *Zapata* procedure and to move for a dismissal of the suit in its own right on behalf of the corporation. It would not be surrendering its § 141(a) authority to an independent committee which, as I read *Zapata,* is now permitted only in a situation where the board, or a majority thereof, is disqualified under the circumstances alleged in the complaint.

Here, however, the plaintiff's suit was filed on September 2, 1982. In an effort to comply with Rule 23.1 it alleged that some two weeks earlier a prior demand had been made and that the corporation had failed to act other than to respond in such a fashion as to indicate that the demand was a futile one because the board was awaiting advice from one of the three potential defendants. More than three weeks thereafter CCTC's board met in special session to consider the matter and as a result concluded by resolution that the best interests of the corporation would be served by turning the matter over to Mr. Zinsli as an independent Litigation Committee, with full and final authority to take such action as he deemed necessary with regard to the pending suit, free of any control by the board of directors.

■ Under these circumstances it seems reasonable to conclude that in the face of the allegations in the complaint concerning the prior demand the board was satisfied that the situation was one in which it should step aside and avail itself of the procedure authorized under *Zapata* in cases of board disqualification. Having thus, in effect, conceded its disqualification, and having thereby conceded the claimed right of the plaintiff to bring the suit without awaiting word from it, I do not feel that CCTC's board of directors can thereafter authorize corporate counsel to move to dismiss the derivative suit based on the contention that the plaintiff lacked the standing to initiate it. Accordingly, for this reason, the motion of CCTC to dismiss for failure of the plaintiff to comply with Rule 23.1 will be denied.

### As To The Motion Of The Individual Defendants To Dismiss

Since the suit was filed, a stipulated dismissal has been entered as to the defendant Leaver. This is because service of process was attempted under 10 *Del.C.* § 3114, the director consent statute, and it has since been determined that Leaver was not a director at the time of the events complained of. The remaining defendants, Bahre and Hambrecht, however, have also moved in their own right to dismiss the derivative suit against them for the same alleged failure of the plaintiff to comply with Rule 23.1.

Bahre and Hambrecht contend that compliance with Rule 23.1 is a jurisdictional requirement and that even if CCTC, through the action of its board, can be said to have waived such a jurisdictional defect, they, as individual defendants, have not. They say that as individual defendants named in a derivative suit they have standing to move to dismiss under Rule 23.1, citing *Shlensky v. Dorsey,* 574 F.2d 131 (3rd Cir.1978) and *Weiss v. Temporary Investment Fund, Inc.,* 516 F.Supp. 665 (D.Del. 1981), *motion for reargument denied,* 520 F.Supp. 1098 (D.Del.1981).

I think, however, that those decisions are distinguishable. Both involved named defendants who were outsiders and who were not members of the board of directors of the corporation on whose behalf the derivative action had been filed. That is not the case here. Bahre and Hambrecht are alleged to be directors of CCTC and there is nothing of record to dispute it. Nor is there any indication of record that they did not participate in the decision of CCTC's board to defer to the Litigation Committee on the question of whether or not the suit should be maintained.

■ Under these circumstances, I do not feel that Bahre and Hambrecht should be permitted to move to dismiss plaintiff's suit under Rule 23.1 even before the Litigation Committee has had an opportunity to make a recommendation. Certainly, the authorities relied on by the individual defendants do not stand for such a proposition. Their motion to dismiss will also be denied.

### As To The Motion To Stay

■ As to the motion of the defendants to stay all proceedings in the case pending the investigation and report of the Litigation Committee, I find it well taken. The board of directors of CCTC has acted under the power given to it by *Zapata* in a case of board disqualification and has appointed an independent committee to investigate the charges set forth in the derivative complaint. It has further directed the committee to make a recommendation as to whether it is in the best interests of the corporation to have the charges pursued or whether the best interests of the corporation would be served by moving to have the suit dismissed. As indicated previously, I have found this action to be appropriate under the circumstances.

If *Zapata* is to be meaningful, then it would seem that such an independent committee, once appointed, should be afforded a reasonable time to carry out its function. It would likewise seem reasonable to hold normal discovery and other matters in abeyance during this interval. If a deriva-

tive plaintiff were to be permitted to depose corporate officers and directors and to demand the production of corporate documents, etc. at the same time that a duly authorized litigation committee was investigating whether or not it would be in the best interests of the corporation to permit the suit to go forward, the very justification for the creating of the litigation committee in the first place might well be subverted. Likewise, in effect, it would likely amount to simultaneous discovery of the same persons and materials by two separate sources, both allegedly acting on behalf of the corporation. In many cases where the *Zapata* procedure is invoked, what amounts to a duplication of discovery may well prove to be inevitable. But this provides no basis for permitting simultaneous, dual investigation and discovery of the derivative allegations in all such cases.

Plaintiff contends that as a party plaintiff in a pending suit she has the subpoena power of the Court and other discovery tools available to her which, arguably, the Litigation Committee does not. She says that she thus has the means available to her to reach nonparty witnesses and entities and to compel the disclosure of relevant information by them which, again arguably, the Litigation Committee does not. For this reason, she argues that discovery by her should be permitted to go forward even while the Litigation Committee goes about its task. This, however, is nothing more than an argument that if permitted she could possibly do a better job of investigating the matter than could the Litigation Committee.

The determining factor, however, is not who could do the better job. Again, the focus in *Zapata* was on the right of a derivative plaintiff to maintain an action after it had been properly filed in a "demand excused" situation. The purpose of the independent committee as authorized by *Zapata* is to act as an independent arm of the ultimate power given to a board of directors under 8 *Del.C.* § 141(a) to determine whether or not a derivative plaintiff's pend-

ing suit brought on behalf of the corporation should be maintained when measured against the overall best interests of the corporation. If the purpose is to determine the right of the plaintiff to maintain the suit, then it would seem that the right of the independent committee to investigate and report its findings must take priority over any entitlement of the plaintiff to go forward with the pending action. Thus, I think that a stay of all proceedings in this case is proper.

In conclusion, one final comment would seem to be warranted. In all *Zapata* type cases in which a stay is entered so as to permit the independent committee to make its investigation, the question will then turn to the duration of that stay. To state the obvious, the length of the stay to be entered in any case will be dependent necessarily upon the particular facts and circumstances of that case. It thus becomes a matter for the discretion of this Court. This, no doubt, will cause an additional contested proceeding in this Court in each such case. Presumably, however, this is but the small price of progress.

For the reasons set forth herein, the motion of the defendants to dismiss is denied. The motion to stay all proceedings is granted. An appropriate form of order may be submitted.