Frank J. SEMINARIS, Sr., individually and derivatively on behalf of Fidelity Medical, Inc., a Delaware corporation, Plaintiff,

v.

Efraim E. LANDA, Rone H. Lewis III, Herbert M. Haber, Herbert Grossman, Mark S. Hoffman, Jay Trien, and Martin A. Cearnal, Defendants,

and

Fidelity Medical, Inc., Nominal Defendant.

Civ. A. No. 12579.

Court of Chancery of Delaware, New Castle County.

Submitted: April 17, 1995.
Decided: May 2, 1995.

Joseph A. Rosenthal, of Rosenthal, Monhait, Gross & Goddess, P.A., Wilmington; Of Counsel: Curtis V. Trinko, and Timothy J. MacFall, of Law Offices of Curtis V. Trinko, New York City; and Kenneth A. Elan, New York City, for plaintiff.

Paul P. Welsh, of Morris, Nichols, Arsht & Tunnell, Wilmington, for defendants; Of counsel: Lowenstein, Sandler, Kohl, Fisher & Boylan, Roseland, NJ, for defendant Fidelity Medical, Inc.

Sills, Cummis, Zuckerman, Radin, Tischman, Epstein & Gross, Newark, NJ, for defendants Herbert Grossman, Herbert Haber and Martin Cearnal.

Smith, Campbell & Paduano, New York City, for defendant Mark S. Hoffman.

Gordon, Hurwitz, Butowsky, Weitzer, Shalov & Wein, New York City, for defendant Jay Trien; and Saiber, Schlesinger, Satz & Goldstein, Newark, NJ, for defendant Rone H. Lewis III.

### OPINION

CHANDLER, Vice Chancellor.

Fidelity Medical, Inc. ("Fidelity Medical") moves to dismiss this derivative lawsuit for failure to make demand on the board of directors of Fidelity Medical, or plead with particularity the futility of that demand. Fidelity Medical has also appointed a special committee of outside directors to review the merits of plaintiff's claim. The special committee recently issued a report recommending dismissal of plaintiff's lawsuit. Fidelity Medical offers the report of the special committee as an alternative reason to dismiss this lawsuit should the Court determine that demand was excused.

### I.

On a motion to dismiss for failure to comply with the requirements of Rule 23.1, the Court limits its considerations of the facts to the particularized facts alleged in the complaint. *Aronson v. Lewis,* Del.Supr., 473 A.2d 805, 813 (1984). The following is a brief overview of the allegations in the amended complaint and a summary of the procedural background of this case.

Frank J. Seminaris (the "plaintiff"), a stockholder of Fidelity Medical, brings this action derivatively on behalf of Fidelity Medical against Efraim E. Landa ("Landa"), and Rone H. Lewis III, J. Herbert Grossman, Mark S. Hoffman, Jay Trien and Martin A.

Cearnal (collectively "defendants"), and Fidelity Medical as nominal defendant, for alleged breaches of fiduciary duties. Plaintiff contends that defendants conspired with Landa, the former Chairman of the Board and Chief Executive Officer of Fidelity Medical, to release misleading and inaccurate information regarding the corporation. Plaintiff alleges that defendants' wrongful conduct subjected Fidelity Medical to several securities fraud lawsuits and an investigation by the Securities Exchange Commission (the "SEC").

The events that lead to this lawsuit began in 1991. Fidelity Medical, a producer and distributer of medical devices and instruments, developed two successful product lines during the 1980s. In 1991, following several years of successful growth, Fidelity Medical decided to make a public offering of its stock. The documents filed in the course of that public offering describe the company's past earnings and prospective growth in glowing terms.

In early 1992, Landa, as CEO of Fidelity Medical, made several public statements that gave positive impressions of Fidelity Medical's earnings despite reported losses for the last quarter of 1991. In April of 1992, Fidelity Medical reported preliminary results for the second quarter of 1992. Landa stated that Fidelity Medical achieved record sales and would report a $250,000 profit for the period. On May 8, 1992, Fidelity Medical disclosed that its preliminary report of its second quarter results were significantly overstated. The company announced that Landa had resigned as CEO and from the board of directors. The board of directors appointed a committee of outside directors to find a new CEO and investigate the overstatements. Fidelity Medical also acknowledged that the SEC was investigating its recent public statements.

In response to Fidelity Medical's disclosure of the overstatements, eight class action lawsuits were filed in federal court in New Jersey. Seminaris filed his original complaint in this action on May 22, 1992, alleging that the directors of Fidelity Medical breached their fiduciary duties to its stockholders. In January 1993, the parties to this action agreed to stay this proceeding until the completion of the federal litigation. The stay expired when the federal litigation ended through a judicially approved settlement in 1994. On December 15, 1994, Fidelity Medical's special committee, which the board authorized to review plaintiff's allegations, issued a report recommending dismissal of this action. Defendants move to dismiss this action on the ground of failure to comply with Rule 23.1, or in the alternative, on the basis of the special committee's report recommending dismissal.

## II.

■ Plaintiff argues that the Court does not have to apply the traditional demand excused test in this case because defendants conceded demand futility by appointing a special committee to review the merits of this lawsuit before making a motion to dismiss for failure to comply with Rule 23.1. Defendants respond that *Spiegel v. Buntrock*, Del.Supr., 571 A.2d 767 (1990), permits a board of directors to appoint a special litigation committee without conceding demand futility. Plaintiff distinguishes *Spiegel* because the board in *Spiegel* made a motion to dismiss for failure to comply with Rule 23.1 before appointing the special committee. Plaintiff contends that *Spiegel* created a procedural rule that requires a board of directors to make a motion to dismiss for failure to comply with Rule 23.1 before the board appoints a special committee. Plaintiff cites *Levine v. Smith*, Del.Supr., 591 A.2d 194 (1991) and *Abbey v. Computer & Communications Technology*, Del.Ch., 457 A.2d 368 (1983) as further support for that proposition.

In *Spiegel*, the Delaware Supreme Court confirmed a board of directors' right to delegate its control over derivative litigation to a committee of board members without automatically subjecting the committee to the enhanced scrutiny of the two tiered test established in *Zapata v. Maldonado*, Del.Supr., 430 A.2d 779 (1981). *Spiegel*, 571 A.2d at 777. The Supreme Court reasoned that applying the *Zapata* standard without first determining that demand on the board was excused would interfere with a board of directors' right, pursuant to 8 *Del.C.* § 141(c),

to delegate its authority to a committee of directors. *Id.* at 777. In reaching this conclusion, the Court distinguished a Chancery Court decision, *Abbey v. Computer & Communications Technology*, based on procedural differences between the *Spiegel* case and *Abbey.* *Id.* at 776–777. Plaintiff seeks to turn the Court's discussion of the factual differences between *Abbey* and *Spiegel* into a generally applicable procedural rule; however, the Court did not rely on a presumption or a legal standard to distinguish *Abbey.* The Supreme Court was affirming the Chancery Court's finding that the facts in *Spiegel* did not support an inference that the board had conceded demand futility. *Spiegel*, 571 A.2d at 777. To demonstrate that the Fidelity Medical Board conceded demand futility, plaintiff must allege particularized facts to support a factual determination that the board intended to concede demand. *See Spiegel v. Buntrock*, Del.Ch., C.A. No. 8936, Allen, C. (Nov. 17, 1988), 1988 WL 124324, Mem.Op. at 7–8, *aff'd*, 571 A.2d 767 (1990).

Plaintiff contends that *Levine*, a post-*Spiegel* case, supports the proposition that appointing a special committee in response to derivative litigation in and of itself operates as a concession by a board of directors that demand would have been futile. Plaintiff's reliance on *Levine* is baffling. *Levine* was a demand refused case, not a demand excused case. Moreover, the sentence from *Levine* relied on by plaintiff directly contradicts the proposition he claims it supports:

> [A]s we stated in *Spiegel*, a board of directors concedes demand futility when it is *both interested and established a special litigation committee* to resolve the derivative plaintiff's suit. 571 A.2d at 777 (quoting *Abbey*, 457 A.2d at 373); *see also Aronson*, 473 A.2d at 814.

*Levine*, 591 A.2d at 209 (emphasis added). This sentence restates the ruling in *Spiegel*— a disinterested board of directors does not waive its right to control derivative litigation merely by delegating that control to a special committee. For this Court to find that a board of directors conceded the futility of demand, a derivative plaintiff must allege particularized facts that support a factual finding that the board made the concession.

*Spiegel, supra*, 1988 WL 124324, Mem.Op. at 8.

The circumstances of this case do not support an inference that the board was conceding the futility of demand by appointing the special committee. The board appointed a special committee of outside directors to investigate the misrepresentations of Fidelity Medical's financial condition on May 7, 1992, three weeks *before* plaintiff filed his complaint. Shortly after plaintiff's complaint was filed, the board delegated its decisional authority over plaintiff's derivative claims to the special committee already investigating the problem. Plaintiff contends that the board conceded its impairment by these actions alone—he has alleged no other facts to demonstrate that the board considered itself incapable of considering plaintiff's demand. In *Abbey*, the board reacted to a derivative lawsuit by adding a new independent director and designated him as a one member special committee. *Abbey*, 457 A.2d at 373. In contrast, the Fidelity Medical board appointed current board members to the special committee. Perhaps most significantly, plaintiff has not alleged any facts that demonstrate an apparent interest for some board members, but not for the members of the special committee. Plaintiff has failed to demonstrate that the board conceded demand futility; therefore, plaintiff must demonstrate that demand was excused.

### III.

The parties disagree over which standard for determining demand futility applies in this case. Plaintiff believes I should apply the traditional two pronged demand excused test established in *Aronson.* 473 A.2d at 814. Defendant contends that the *Aronson* test does not apply to this case because plaintiff is not challenging a decision of the board. They assert that the one step standard recently announced in *Rales v. Blasband*, Del.Supr., 634 A.2d 927 (1993), is the appropriate test. Obviously, I must determine which standard is appropriate before analyzing plaintiff's allegations under that standard.

The familiar two step *Aronson* test applies to derivative claims that attack a business

judgment of the board. Under this standard, plaintiff must plead particularized facts that create a reasonable doubt that 1) the directors are disinterested and independent, or 2) whether the challenged transaction was a valid exercise of business judgment. *Aronson*, 473 A.2d at 814. If a derivative plaintiff can demonstrate a reasonable doubt as to the first or second prong of the *Aronson* test, then he has demonstrated that demand would have been futile. *See id.* at 814. The Supreme Court recently explained that the second step of *Aronson* does not apply where directors are sued for failing to take some action, such as failing to properly supervise the corporation's employees. *Rales*, 634 A.2d at 933, 934 n. 9.

In this case, plaintiff does not challenge a decision of Fidelity Medical's board of directors. Plaintiff alleges that the board failed to prevent Landa from misrepresenting the corporation's financial condition. The complaint also alleges that certain board members signed misleading statements on behalf of the corporation, and that all of the defendants conspired with Landa to misrepresent the value of the corporation's stock. However, plaintiff does not challenge any specific board action that approved or ratified these alleged wrongdoings. Therefore, plaintiff must satisfy the one step test announced in *Rales* to demonstrate that he was excused from making a demand. *Rales*, 634 A.2d at 933.

■ Under the *Rales* standard, I must determine whether plaintiff's particularized allegations "create a reasonable doubt that, as of the time the complaint was filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." *Id.* at 934. A director is interested if he will be materially affected, either to his benefit or detriment, by a decision of the board, in a manner not shared by the corporation and the stockholders. *Id.* at 936. The "mere threat" of personal liability in the derivative action does not render a director interested; however, a "substantial likelihood" of personal liability prevents a director from impartially considering a demand. *Id.* at 936 (citing *Aronson*, 473 A.2d at 815). Even if a di-

rector has no personal interest in a decision, his discretion must also be free from the influence of other interested persons. *Id.* at 936. A director is independent if he can base his decision "on the corporate merits of the subject before the board rather than extraneous considerations or influences." *Aronson*, 473 A.2d at 816.

■ Plaintiff asserts that all of the directors had an interest that disqualified them from deciding whether Fidelity Medical should pursue this litigation. Plaintiff identifies the directors' potential personal liability and criminal sanctions for their alleged involvement in Fidelity Medical's misrepresentations as a disabling interest that excused demand. The complaint alleges that prior to May 22, 1992, several shareholders filed federal securities fraud claims against defendants and the SEC had undertaken an investigation of defendants. Plaintiff states that a decision by the board to pursue this litigation would have adversely affected defendants' ability to defend the federal lawsuits and influenced the SEC's decision to prosecute defendants. Plaintiff further contends that defendants' interest in avoiding liability in this action impairs their ability to impartially review the merits of his claims.

Plaintiff has failed to create a reasonable doubt that any of the directors were disinterested. This is not the rare case, envisioned by the Supreme Court in *Aronson*, where defendants' actions were so egregious that a substantial likelihood of director liability exists. 473 A.2d at 815. Plaintiff has alleged facts that demonstrate a substantial likelihood of personal liability for Landa, but Landa resigned from the board before plaintiff filed his complaint. Plaintiff attributes Landa's wrongdoing to the directors through an alleged conspiracy to inflate the value of Fidelity Medical's stock. The only particular allegations that support plaintiff's conspiracy theory are that three of the directors, Lewis, Haber and Grossman, signed a misleading 10-K and a misleading registration statement. On these facts, I cannot find that the directors faced a substantial likelihood of liability for conspiring with Landa.

The complaint also seeks to hold the directors liable for failing to adequately super-

vise Landa and other employees involved in the alleged wrongdoings. In order to hold the directors liable, plaintiff will have to demonstrate that they were grossly negligent in failing to supervise these subordinates. The complaint contains long descriptions of Landa's wrongdoing, but alleges in a conclusory manner that the other directors "looked the other way." The particularized facts of the complaint do not describe such egregious conduct by the directors that they face a substantial likelihood of liability due to their failure to prevent Landa's misrepresentations.

In his brief, plaintiff virtually concedes that the threat of personal liability in this action was not substantial enough to render the directors interested. He asserts, however, that the threat of liability in the related federal lawsuits and the threat of criminal sanctions by the SEC would have impaired the directors' ability to impartially consider his demand. I cannot agree with plaintiff that the threat of liability in the related actions has a greater impact on the directors' discretion than the threat of liability in this derivative action. Plaintiff is merely uttering a slightly altered version of the discredited refrain—"you can't expect directors to sue themselves." *See Decker v. Clausen,* Del. Ch., C.A. No. 10684, Berger, V.C., 1989 WL 133617 (Nov. 6, 1989). Furthermore, plaintiff has failed to demonstrate that the directors risked increasing their exposure to personal liability or criminal sanctions in the related actions if they pursued plaintiff's claims. Plaintiff contends that the board had an interest in avoiding an investigation into the facts surrounding Fidelity Medical's misleading public statements. Yet, the board could have avoided this potential conflict by seeking to stay this lawsuit until the completion of the related cases, just as the plaintiff actually did. I conclude that the purported link between a board decision to pursue this lawsuit and the directors' risk of personal liability or criminal sanctions in the related actions could not have materially affected the discretion of any of the directors.

Plaintiff has not alleged particularized facts that create a reasonable doubt that any of the directors are disinterested or independent. Accordingly, plaintiff should have made a demand on the Fidelity Medical board before filing his complaint. Because demand was required, I have no need to review the report of the special committee. The special committee can act on its conclusions without submitting them to the approval of this Court. Defendants' motion to dismiss for failure to comply with Rule 23.1 is granted.