# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| TODD ROWAN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>INFINITY Q CAPITAL MANAGEMENT, )<br>LLC, U.S. BANCORP FUND SERVICES, )<br>LLC, JOHN C. CHRYSTAL, ALBERT J. )<br>DIULIO, HARRY E. RESIS, BRIAN S. )<br>FERRIE, WAN-CHONG KUNG, )<br>CHRISTOPHER E. KASHMERICK, )<br>STEVEN J. JENSEN, RUSSELL B. SIMON )<br>and SCOTT A. RESNICK, )<br>)<br>Defendants, )<br>)<br>and )<br>)<br>TRUST FOR ADVISED PORTFOLIOS, )<br>)<br>Nominal Defendant. ) | C.A. No. 2022-0176-MTZ |

## ORDER DENYING NOMINAL DEFENDANT TRUST FOR ADVISED PORTFOLIOS' RULE 23.1 MOTION TO DISMISS

WHEREAS, having considered the Motion to Dismiss the Verified Derivative Complaint for Declaratory and Monetary Relief pursuant to Court of Chancery Rule 23.1 and 12 *Del. C*. § 3816(c) (the "Motion")[1] filed by Nominal Defendant

---

[1] Docket Item ("D.I.") 15.

Trust for Advised Portfolios (the "Trust"), the parties' briefing on the Motion,[2] and oral argument held on September 1, 2022, it appears:[3]

A.      The Trust is a Delaware statutory trust governed by 12 *Del. C.* § 3801, *et seq.*  It has a board comprising five trustees, which has the power to establish mutual funds as series of the Trust.[4]  The Trust has established from sixteen to eighteen series.[5]

B.      Infinity Q Diversified Alpha Fund (the "Fund") is one such series.[6]  It has its own board of trustees (the "Board"), populated by the Trust's trustees and

---

[2] D.I. 16 [hereinafter "OB"]; D.I. 21 [hereinafter "AB"]; D.I. 24 [hereinafter "RB"].

[3] D.I. 30.  I draw the following facts from Plaintiff's Verified Complaint for Declaratory and Monetary Relief, available at D.I. 1 [hereinafter "Compl."], as well as the documents attached and integral to it.  *See, e.g.*, *Himawan v. Cephalon, Inc.*, 2018 WL 6822708, at *2 (Del. Ch. Dec. 28, 2018); *In re Gardner Denver, Inc. S'holders Litig.*, 2014 WL 715705, at *2 (Del. Ch. Feb. 21, 2014).

[4] OB Ex. 5, Amended and Restated Agreement and Declaration of Trust  §§ 3.1, 3.2(b) [hereinafter "Decl. of Tr."].  Plaintiff referred to the Amended and Restated Agreement and Declaration of Trust in paragraphs 33, 40, 92, 93, and 262 of his Complaint.  I may consider it as integral to the Complaint.  *Fortis Advisors LLC v. Allergan W.C. Hldg. Inc.*, 2019 WL 5588876, at *3 (Del. Ch. Oct. 30, 2019) (finding documents were integral to the complaint where the documents plaintiff referenced in its complaint "form[ed] the factual foundation of its claim, and therefore [were] integral to the claim").

[5] Compl. ¶ 48 ("The Trustee Defendants are members of the Fund's Board as well as approximately 15 other boards of mutual funds operated by U.S. Bank."); OB Ex. 3 at 2 [hereinafter "Application"] ("The Trust has 18 series, each series of shares having a different investment objective and different investment policies.").  Plaintiff referred to the Fund's application to the SEC pursuant to Rule 22(e) of the Investment Company Act of 1940 in paragraphs 221 through 224 of his Complaint.  I may consider it as integral to the Complaint.  *Fortis Advisors*, 2019 WL 5588876, at *3.

[6] Compl. ¶ 7 ("The Fund was a mutual fund offered to the public through the Trust . . . ."); Decl. of Tr. § 3.2(b).

any Series Trustee that the Trust's board may appoint.[7]  Defendant U.S. Bancorp Fund Services, LLC ("U.S. Bank") served as the Fund's administrator, accountant, transfer agent, and custodian responsible for virtually all of the Fund's operations, including valuing the Fund's assets and calculating its net asset value.  U.S. Bank also provided its employees to serve in the Fund's officer and trustee positions. Defendant Infinity Q Capital Management, LLC ("Infinity Q") served as the Fund's investment advisor and managed its portfolio of securities.  The Board and U.S. Bank permitted Infinity Q to unilaterally price virtually all of the Fund's non-cash assets.  In the absence of adequate oversight, Infinity Q manipulated the prices, creating widespread valuation inaccuracies.

C.    On May 13, 2020, the SEC launched an inquiry into the Fund's securities valuation practices.  On February 18, 2021, the SEC determined that valuation issues were too extensive to remediate individually and informed the Board that it should suspend redemptions and begin the process of liquidation.  On February 22, the Fund applied for and the SEC granted permission to suspend redemptions and liquidate (the "Application").[8]  The Fund completed its liquidation in March, and approximately ninety days later it submitted its distribution plan to

---

[7] Compl. ¶¶ 41–49, 261; Decl. of Tr. § 3.7.

[8] *See generally* Application.

the SEC (the "Plan of Distribution").[9] On November 8, the Plan of Distribution was finalized.[10]

D. Within days of the SEC granting the Application, plaintiffs started filing class actions and individual actions.[11]

E. On December 20, the Trust appointed Andrew M. Calamari, Esq. as a new Series Trustee for the Fund and

> delegate[d] to Mr. Calamari the full and exclusive power and authority of the [Trust] Board to (i) investigate, review, and evaluate any potential Claims, (ii) determine whether prosecution, settlement, or other disposition of any such Claims is in the best interests of the Fund and its shareholders in light of all the facts and circumstances, and (iii) supervise any such prosecution, settlement, or other disposition of such Claims . . . .[12]

The Trust then created a special litigation committee (the "Committee") to "facilitate the fulfillment of the 'Series Trustee Mandate'" to "investigate and, in such Series

---

[9] Compl. ¶¶ 26, 30, 224, 228.

[10] OB Ex. 4. Plaintiff referred to the Fund's Plan of Distribution in paragraphs 30 and 224 of his Complaint. I may consider it as integral to the Complaint. *Fortis Advisors*, 2019 WL 5588876, at *3.

[11] *Yang v. Tr. for Advised Portfolios*, No. 1:21-cv-01047 (E.D.N.Y. Feb. 26, 2021); *Sherck v. U.S. Bancorp Fund Servs., LLC*, No. 2022CV000846 (Wis. Cir. Ct., Milwaukee Cty. Feb. 9, 2022); *Schiavi + Co., v. Tr. for Advised Portfolios*, No. 1:22-cv-00896 (E.D.N.Y. Feb. 17, 2022). I may take judicial notice of these cases. D.R.E. 202(a)(1) ("Every court in this State may take judicial notice of the common law, case law and statutes of the United States and every state, territory and jurisdiction of the United States.").

[12] OB Ex. 5, Resolution Appointing Special Litigation Committee at 1 [hereinafter "Series Trustee Resolution"]; *accord id.* at 1 ("RESOLVED FURTHER, that the Board is satisfied and has determined that Mr. Calamari is independent within the meaning of the Investment Company Act of 1940 and is otherwise disinterested with respect to any potential Claims . . . ."); *id.* at 1–2 ("RESOLVED FURTHER, that consistent with Section 3.2 of

4

Trustees' discretion, take further action in relation to, any Claims (for the benefit of the Fund and/or its shareholders)."[13]  The Trust appointed Calamari to serve as the Committee's sole member.[14]

F.      On February 23, Plaintiff filed his shareholder derivative Complaint, seeking relief against U.S. Bank, the Board, the Fund's officers, and Infinity Q for breaches of contract and fiduciary duty.  The Trust is the nominal defendant.

G.      Under 12 *Del. C.* § 3816, a shareholder seeking to bring a derivative action on behalf of a statutory trust may do so "if persons with authority to do so

---

the Declaration, and solely with respect to any Claims, Mr. Calamari: . . . shall have full power and authority to do any and all acts and to make and execute any and all contracts and instruments that he may consider necessary or appropriate in connection with the administration of any Claims; [and] shall have full authority and absolute power and control over any Claims to the same extent as if he were the sole owner of any such Claims, including such authority, power and control to do all acts and things as he, in his discretion, shall deem proper to administer any such Claims . . . ."); Decl. of Tr. §§ 3.2(g), 3.7.  Plaintiff referred to the Resolution Appointing Series Trustees in paragraphs 31, 49, and 245 of his Complaint.  I may consider it as integral to the Complaint.  *Fortis Advisors*, 2019 WL 5588876, at *3.

[13] OB Ex. 5, Resolution Appointing Series Trustee  at 1 [hereinafter "SLC Resolution"]; Decl. of Tr. §§ 3.2(d), (g).  Plaintiff referred to the Resolution Appointing Special Litigation Committee in paragraphs 31, 50, and 245 of his Complaint.  I may consider it as integral to the Complaint.  *Fortis Advisors*, 2019 WL 5588876, at *3.  *Compare* SLC Resolution at 1 (authorizing the SLC to investigate and "take further action, in relation to the Claims" including prosecute them in furtherance of the Series Trustee Mandate), *with FLI Deep Marine LLC v. McKim*, 2009 WL 1204363, at *2 (Del. Ch. Apr. 21, 2009) ("[T]he Board formed a special committee to investigate the allegations asserted in the demand letter and to make a recommendation to the Board in connection with the demand."), *and Rich ex rel. Fuqi Int'l, Inc. v. Yu Kwai Chong*, 66 A.3d 963, 970 (Del. Ch. 2013) ("The board authorized the Special Committee to retain experts and advisors to investigate whether the claims in the demand were meritorious.").

[14] SLC Resolution at 1.

have refused to bring the action or if an effort to cause those persons to bring the action is not likely to succeed."[15] Statutory trust shareholder plaintiffs must plead "with particularity the effort, if any, of the plaintiff to secure initiation of the action by the persons with authority to do so, or the reasons for not making the effort."[16] On the Trust's Motion, it is undisputed that the Committee member(s) are the "persons with authority," as delegated.[17]

---

[15] 12 *Del. C.* § 3816(a).

[16] 12 *Del. C.* § 3816(c). On August 1, 2012, the Delaware General Assembly amended Section 3816. *Compare* 12 *Del. C.* § 3816(a) (July 31, 2012) (amended Aug. 1, 2012) ("A beneficial owner may bring an action in the Court of Chancery in the right of a statutory trust to recover a judgment in its favor if *trustees* with authority to do so have refused to bring the action or if an effort to cause those *trustees* to bring the action is not likely to succeed." (emphasis added)), *and* 12 *Del. C.* § 3816(c) (July 31, 2012) (amended Aug. 1, 2012) ("In a derivative action, the complaint shall set forth with particularity the effort, if any, of the plaintiff to secure initiation of the action by the *trustees*, or the reasons for not making the effort." (emphasis added)), *with* 12 *Del. C.* § 3816(a) ("A beneficial owner may bring an action in the Court of Chancery in the right of a statutory trust to recover a judgment in its favor if *persons* with authority to do so have refused to bring the action or if an effort to cause those *persons* to bring the action is not likely to succeed." (emphasis added)), *and* 12 *Del. C.* § 3816(c) ("In a derivative action, the complaint shall set forth with particularity the effort, if any, of the plaintiff to secure initiation of the action by the *persons with authority to do so*, or the reasons for not making the effort." (emphasis added)). *Cf.* Ct. Ch. R. 23.1(a) ("The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and the reasons for the plaintiff's failure to obtain the action or for not making the effort.").

[17] Compl. ¶¶ 245–46; OB at 15–19; AB at 9–13 & n.31; RB at 2, 7–8, 13–15. To the extent any party disagrees, they have waived the issue. *Emerald P'rs v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999) ("Issues not briefed are deemed waived.").

Defendants assert a second Series Trustee was appointed March 3, 2022. OB at 10, n.4, & Ex. 6; *see also* AB at 9 n.27. This is not integral to the Complaint, and I cannot consider it. *Orman v. Cullman*, 794 A.2d 5, 15 (Del. Ch. 2002).

H.     While Plaintiff does not dispute on the Trust's Motion that the Committee member(s) are the "persons with authority" to whom demand should be made, Plaintiff's Complaint endeavored to plead demand futility only as to the Board.[18] The Committee has not moved to intervene or to stay this litigation. The Trust's Motion seeks dismissal for failure to plead demand futility as against the Committee.

I.     Plaintiff contends the Trust's Motion was brought by the defendant Board members, or by particular trustee and officer defendants specifically—not by the Committee.[19] The Trust does not dispute that conclusion. Plaintiff asserts "any Defendant in this matter" cannot bring the Motion because the Trust board expressly delegated its authority over derivative claims to the Committee, under *Abbey v. Computer & Communications Technology Corp.*[20]

---

[18] AB at 9–13; Compl. ¶¶ 260–67.

[19] AB at 2–3, 10 & nn.3, 30. Plaintiff drew this conclusion from the fact that in this litigation and in Plaintiff's negotiations preceding it, the Trust is represented by the same counsel that has been representing the Fund's Board members and officers Christopher E. Kashmerick, John C. Chrystal, Albert J. DiUlio, Harry E. Resis, Brian S. Ferrie, Wan-Chong Kung, Steven J. Jensen, and Russell B. Simon (the "Valuation Defendants") in other actions. *Id.* at 8–9 & n.23; *see supra* note 11 (explaining why the other lawsuits against the Trust are properly considered on the pending Motion). Plaintiff does not include "Officer Defendant" Scott A. Resnick in his definition of a "Valuation Defendant." AB at 6; Compl. ¶¶ 75–76, 80. Plaintiff also does not address how DiUlio, Jensen, or Simon might have caused the Trust to act. *Id.* ¶ 44 ("DiUlio served as trustee of the Trust since 2011 and of the Fund since its inception in 2014. He retired as a trustee in December 2020."); *id.* ¶¶ 75–76, 78–79 (describing Jensen and Simon as officers of the Fund and U.S. Bank employees).

[20] 457 A.2d 368, 369 (Del. Ch. 1983); AB at 13; *accord id.* at 11.

J.      In some circumstances, the creation of a special litigation committee "amount[s] to a tacit admission by the board that a majority of the directors cannot objectively address the litigation decision[,] . . . the business judgment rule has no application," and enhanced judicial review under *Zapata Corp. v. Maldonado* is appropriate.[21]  *Zapata* applies "only" where the board is disqualified and making a demand would be excused.[22]  Where the board has delegated all authority over derivative claims to a special litigation committee and has conceded its inability to steer those claims, the board has also given up its ability to assert procedural defenses such as a motion to dismiss under Court of Chancery Rule 23.1.[23]  Where *Zapata* review does not apply, the board can still act for itself "and cause an appropriate motion to be made on behalf of the corporation."[24]  "For this Court to find that a board of directors conceded the futility of demand," and has also abdicated its

---

[21] 430 A.2d 779 (Del. 1981); *see* Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 11.05[a], at 11-151 (2021) (citing *Abbey v. Comput. & Commc'ns Tech. Corp.*, 457 A.2d 368, 373–74 (Del. Ch. 1983)); *In re Oracle Corp. Deriv. Litig.*, 2020 WL 3867407, at *11 (Del. Ch. July 9, 2020) ("But *Zapata*'s exception from business judgment rule review applies only within its context: 'demand-excused derivative cases in which the board sets up a[ ] [special litigation committee] that investigates whether a derivative suit should proceed *and recommends dismissal after its investigation.*'") (quoting *London v. Tyrrell*, 2010 WL 877528, at *11 (Del. Ch. Mar. 11, 2010), and citing *Spiegel v. Buntrock*, 1988 WL 124324, at *3 (Del. Ch. Nov. 17, 1988), *aff'd* 571 A.2d 767 (Del. 1990))).

[22] *Busch ex rel. Richardson Elecs., Ltd. v. Richardson*, 2018 WL 5970776, at *13 (Del. Ch. Nov. 14, 2018) (discussing (quoting *Spiegel v. Buntrock*, 571 A.2d 767, 777 (Del. 1990)).

[23] *Abbey*, 457 A.2d at 373.

[24] *Richardson*, 2018 WL 5970776, at *13 (internal quotation marks omitted) (quoting *Spiegel*, 571 A.2d at 777, and citing *Abbey*, 457 A.2d at 372–73).

8

control over procedural defenses, "a derivative plaintiff must allege particularized facts that support a factual finding that the board made the concession."[25]

K. Whether a board has divested itself of the ability to bring a Rule 23.1 motion can depend on the sequence and terms by which the board created the special litigation committee. In *Abbey*, after the plaintiff made demand and then filed suit, the board "appoint[ed] a new board member to serve as a one-man special litigation committee, and delegated full authority to him to handle the derivative litigation. The board in *Abbey* never made any attempt to address the derivative litigation itself."[26] Chancellor Brown concluded this sequence of events reflected that the board "divest[ed] itself of any power to make a decision" about the claims, and therefore could not "reserve the right to raise technical or procedural defenses to itself."[27] In his words, "the board should be required to either fish or cut bait."[28] Given the board's post-demand complete delegation and concession of demand futility, Chancellor Brown determined neither the board nor individual directors

---

[25] *Seminaris v. Landa*, 662 A.2d 1350, 1353 (Del. Ch. 1995).

[26] *Spiegel*, 571 A.2d at 776 (considering *Abbey*, 457 A.2d at 370–71, 374).

[27] *Abbey*, 457 A.2d at 373.

[28] *Id.*

could seek dismissal under Rule 23.1.[29] The matter was stayed pending the committee's review.[30]

L. In *Spiegel v. Buntrock*, the plaintiff filed suit without making a demand, and the board moved to dismiss for failure to make a demand.[31] The plaintiff responded to the board's motion by making a demand, at which time the board created a special litigation committee.[32] The Delaware Supreme Court explained this series of events was "the procedural reverse of *Abbey*," and noted the board had "t[aken] charge of the litigation and filed a motion to dismiss."[33] Under those circumstances, the board retained its right to challenge a plaintiff's allegation that demand was excused, even after creating a special litigation committee.[34]

M. Here, the Trust created the Committee before Plaintiff filed suit without making a demand. This series of events is most analogous to that in *Seminaris v. Landa*.[35] There, the board created a special litigation committee to investigate

---

[29] *Id.* at 374–75.

[30] *Id.* at 375–76.

[31] *Spiegel*, 571 A.2d at 771.

[32] *Id.* at 771–72.

[33] *Id.* at 776–77 (considering *Abbey* and *Richardson v. Graves*, 1983 WL 21109 (Del. Ch. June 17, 1983), in which the board first filed a motion to dismiss and then, after the stockholder made a demand, appointed a special litigation committee).

[34] *Spiegel*, 571 A.2d at 777.

[35] 662 A.2d 1350.

conduct subject to an SEC investigation.[36]  Three weeks later, the plaintiff filed a complaint without making a demand.[37]  "Shortly after plaintiff's complaint was filed, the board delegated its decisional authority over plaintiff's derivative claims to the special committee already investigating the problem."[38]  The special committee issued a report recommending dismissal of the plaintiff's lawsuit; the defendants then moved to dismiss based on the plaintiff's failure to comply with Rule 23.1 or, alternatively, on the basis of the committee's report.[39]  Chancellor Chandler explained that "a disinterested board of directors does not waive its right to control derivative litigation merely by delegating that control to a special committee."[40]  He went on to consider the plaintiff's pleadings with regard to the creation of the special committee and whether the board was conflicted from considering a demand.[41]  In particular, he considered whether the committee director was current or new, and whether the plaintiff had pled "an apparent interest for some board members, but not for the members of the special committee."[42]  He concluded the plaintiff failed to

---

[36] *Seminaris v. Landa*, 662 A.2d 1350, 1352–53 (Del. Ch. 1995).

[37] *Id.* at 1353.

[38] *Id.*

[39] *Id.* at 1351–52.

[40] *Id.* at 1353.

[41] *Id.* at 1354–55.

[42] *Id.* at 1353.

plead the board conceded demand futility, and went on to consider and grant the board's Rule 23.1 motion.[43]

N. From these cases, I see at least two ways a plaintiff can plead a board's creation of a special litigation committee conceded futility and delegated the ability to bring a procedural motion: (a) a sequence of events in which the board created a fully empowered committee after the complaint was filed,[44] or (b) other particularized facts, perhaps where the committee was created before the complaint was filed but was comprised of new board members that do not labor under an apparent interest that other board members do.[45] Unless a plaintiff pleads particularized facts creating a reasonable inference that the board conceded demand futility, has a disabling conflict of interest, or lacks independence, then the board retains its presumed power to "make its decision for itself . . . and cause an appropriate motion to be made on behalf of the [entity] just as in any normal suit in which the [entity] was named as a party defendant."[46]

---

[43] *Id.* at 1355.

[44] *E.g.*, *Abbey*, 457 A.2d at 370–73.

[45] *E.g.*, *Seminaris*, 662 A.2d at 1354–55 (acknowledging that particularized facts demonstrating a substantial likelihood of liability may create a reasonable doubt as to director disinterestedness); *Fuqi*, 66 A.3d at 977 ("Therefore, where the plaintiff by particularized pleading has raised a reasonable doubt that the board's actions are in compliance with its fiduciary duties, Rule 23.1 is satisfied and the plaintiff may proceed derivatively." (citing *Thorpe v. CERBCO, Inc.*, 611 A.2d 5, 11 (Del. Ch. 1991))).

[46] *Spiegel*, 571 A.2d at 777 (internal quotation marks omitted) (quoting *Abbey*, 457 A.2d at 373); *Hartsel v. Vanguard Grp., Inc.*, 2011 WL 2421003, at \*21 (Del. Ch. June 15, 2011) ("Thus, because the Trustee Defendants to whom Plaintiffs would have needed to make

**IT IS HEREBY ORDERED** this 12th day of September, 2022, that:

1.      Plaintiff has pled particular circumstances that support an inference that the Trust board conceded demand futility and delegated procedural defenses by appointing a special litigation committee. Plaintiff pled the Committee was formed "before this case was filed," and not in response to a demand or this litigation.[47] Plaintiff went on to plead "the Trustee Defendants appointed a new member to the Board, Andrew M. Calamari, Esq.," and that he was the only member of the Committee.[48] Plaintiff pled that the other Board members faced a conflict Calamari did not: a substantial likelihood of liability.[49] Plaintiff has pled what Chancellor Chandler was searching for in *Seminaris*: particularized facts demonstrating divergent interests between the Trust board and the Committee supporting the inference that even though the Trust board created a special committee before a lawsuit was filed, the circumstances of that committee's creation demonstrate the Trust board conceded demand futility and abdicated control over procedural defenses. I conclude the Trust board divested itself of authority "to raise technical

---

their demand are natural persons, they are presumed to be independent and disinterested for all purposes under Delaware law."), *aff'd*, 38 A.3d 1254, 2012 WL 171881 (Del. 2012).

[47] Compl. ¶ 243; *accord id.* ¶¶ 50, 244, 259.

[48] *Id.* ¶¶ 49–50, 245.

[49] *Id.* ¶¶ 260–66.

or procedural defenses"[50] and to "cause an appropriate motion to be made on behalf of" the Trust.[51]

2. And so, taking as true Plaintiff's undisputed contention that the Motion was brought by Trust board defendants, the Motion must be denied for lack of standing to bring it. The state of the pleadings remains that Plaintiff pled demand was futile as to the Board,[52] while Plaintiff must plead demand futility or wrongful refusal from the Committee.[53] But where it is undisputed that the Motion to dismiss was not brought by the Committee that was irrevocably delegated that power, the Motion cannot succeed.

3. The Trust's motion to dismiss is **DENIED**. Counsel shall confer and inform the Court of next steps.

*/s/ Morgan T. Zurn*
Vice Chancellor Morgan T. Zurn

---

[50] *Abbey*, 457 A.2d at 373.

[51] *Spiegel*, 571 A.2d at 777 (internal quotation marks omitted) (quoting *Abbey*, 457 A.2d at 373).

[52] Compl. ¶¶ 245, 267.

[53] 12 *Del. C.* §§ 3816(a), (c). *Compare* 12 *Del. C.* §§ 3816(a), (c) (July 31, 2012) (amended Aug. 1, 2012) (describing "trustees" as holding the authority to initiate a derivative action), *with* 12 *Del. C.* §§ 3816(a), (c) (describing "persons" as those holding the authority to initiate a derivative action).