**In re FRIEDMAN'S, INC. DERIVATIVE LITIGATION.**

**No. 1:03–cv–3831–WSD.**

United States District Court, N.D. Georgia, Atlanta Division.

Sept. 7, 2005.

Brian J. Robbins, Jeffrey P. Fink, Robbins Umeda & Fink, San Diego, CA, C. Dewey Branstetter, Jr., James G. Stranch, III, James G. Stranch, IV, Branstetter Kilgore Stranch & Jennings, Nashville, TN, Steven James Estep, Cohen Cooper & Estep, Atlanta, GA, for Plaintiffs.

John Allen Jordak, Jr., John Ludlow Latham, Julie M. O'Daniel, Alston & Bird, Kimberly Lillian Myers, Tony Glen Powers, Rogers & Hardin, Gregory Russell Hanthorn, Michael Joseph McConnell, Walter W. Davis, Jones Day, Atlanta, GA, Adam M. Masin, Lance Croffoot–Suede, Martin Bloor, White & Case, Paul M. Alfieri, White & Case, New York, NY, for Defendants.

## ORDER

DUFFEY, District Judge.

This matter is before the Court on David B. Parshall's Motion to Dismiss the Consolidated Derivative Complaint [40, 41], the 'Former Outside Director Defen-

dants'[1] Motion to Dismiss Verified Consolidated Shareholder Derivative Complaint [46], and Defendants Bradley J. Stinn and Sterling B. Brinkley's Motion to Dismiss the Verified Consolidated Shareholder Derivative Complaint [63].[2] Nominal Defendant Friedman's, Inc. ("Friedman's" or the "Company"), also filed a Motion to Dismiss the Verified Consolidated Shareholder Derivative Complaint [44], but this action is stayed as to Friedman's because the Company filed for protection under Chapter 11 of the United States Bankruptcy Code. (*See* Notice of Automatic Stay [62].)[3]

## I. BACKGROUND

On October 27, 2004, Plaintiffs filed their Verified Consolidated Shareholder Derivative Complaint (the "Derivative Complaint"),[4] alleging violations of the Sarbanes–Oxley Act of 2002, breach of fiduciary duties, abuse of control, gross mismanagement, waste of corporate assets, unjust enrichment, professional negligence and breach of contract. Plaintiffs bring this consolidated shareholders' derivative action against the Company's Board of Directors (the "Board"), certain current and former officers, its controlling shareholders and accountant. (Compl.¶ 1.)

Friedman's is one of the largest specialty retailers of jewelry in the United States, operating over 700 stores in 20 states. (Compl.¶ 3.) Plaintiffs allege Friedman's filed and issued false and misleading financial statements between January 26, 2000 and November 11, 2003. They allege further the Company was required to restate its financial results for fiscal years 2000, 2001 and 2002, and the first three quarters of 2003. (*Id.* ¶ 1.) Plaintiffs claim these financial statements were overstated because of a fraudulent scheme, which included: (i) failing to write down in a timely manner the Company's investment in its affiliate, Crescent Jewelers ("Crescent"); (ii) improperly recognizing revenue; (iii) failing to establish an adequate allowance for uncollectible or doubtful accounts; (iv) failing to write down excess inventory; and (v) understating accounts payable.[5] (*Id.* ¶ 129.)

Defendant Phillip E. Cohen is alleged to have "orchestrated" the fraudulent scheme to overstate the Company's financial statements. (Compl.¶ 4.) Defendant Cohen is the controlling shareholder of Friedman's, and he is owner or controlling shareholder of Friedman's affiliate Crescent, Defendant MS Jewelers Corporation and Mor-

---

1. The Former Outside Director Defendants include John E. Cay, III, Robert W. Cruickshank, and Mark C. Pickup.

2. Defendant Douglas Anderson filed a Joinder in Motions to Dismiss of Defendant David B. Parshall, Former Outside Director Defendants, and Nominal Defendant Friedman's, Inc., and, Alternatively, in Motion for Stay of Nominal Defendant Friedman's, Inc. [39].

3. Plaintiffs also assert claims against Phillip Cohen, MS Jewelers Corp., Morgan Schiff & Co., Inc., and Ernst & Young LLP ("E & Y"). E & Y has filed a notice in this case [38], claiming Plaintiffs have no claim against E & Y, have not sought the permission of the

Court to name E & Y, and have not served E & Y with the Complaint.

4. This action is the consolidation of three derivative actions filed in this district. The other two cases were *Walter v. Brinkley*, 03–cv–3832–RWS, and *Tam v. Suglia*, 04–cv–58–TWT.

5. Similar allegations form the basis of a federal securities class action against Friedman's, certain of its officers and directors, controlling shareholders, underwriters and auditor, which is currently pending in this Court. *See In re Friedman's, Inc. Sec. Litig.*, 1:03–cv–3475–WSD (N.D.Ga.).

gan Schiff & Co., Inc. (*Id.* ¶¶ 21, 35.) Defendant Cohen also owns all of Friedman's Class B common stock, which effectively gives him the right to elect up to seventy-five percent of Friedman's directors. Plaintiffs allege further that Defendant Cohen "has significant control over [the Company's] business, policies and affairs, including the power to appoint new management. . . ." (*Id.* ¶ 21.)

When Plaintiffs filed the first derivative action on December 9, 2003, the Board consisted of Defendants Brinkley, Cay, Cruickshank, Parshall and Pickup (the "Director Defendants").[6]  (Compl.¶ 217.) Plaintiffs did not make a demand on the Board to institute this action prior to bringing it.[7]  (*Id.*) Instead, Plaintiffs claim demand would be futile because (i) Cohen dominated and controlled the Director Defendants;  (ii) the Director Defendants would be unwilling to subject themselves to potential liability;  and (iii) the Director Defendants lacked independence because of various financial, employment and business relationships with Friedman's, its affiliated companies and Cohen.  (*Id.*)[8]

Defendants contend Plaintiffs' Complaint should be dismissed for several reasons.  First, Defendants argue Plaintiffs did not satisfy the pleading requirements for bringing a shareholder derivative action without first making a demand on Friedman's Board of Directors that Friedman's assert the claims Plaintiffs allege

here.  Defendants next claim Section 304 of the Sarbanes–Oxley Act does not provide a private right of action and the claim asserted under Section 304 is improper. Because the Sarbanes–Oxley Act claim is Plaintiffs' sole basis for invoking this Court's subject matter jurisdiction, Defendants argue the Court must dismiss Plaintiffs' pendant state law claims.[9]  Finally, Defendants move to dismiss the state law claims against them because: (i) Plaintiffs fail to overcome the presumption of good faith and fair dealing established by the business judgment rule;  (ii) Plaintiffs do not plead insider trading;  (iii) Plaintiffs do not meet the heightened pleading requirements for pleading waste of corporate assets;  (iv) Plaintiffs do not allege facts to overcome the protection for directors from monetary damages afforded by Friedman's Articles of Incorporation and Delaware Code § 102(b)(7); and (v) Plaintiffs do not allege defendants were unjustly enriched.

## II.  *DISCUSSION*

### A.  *Motion to Dismiss Standard*

A "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  On a motion to dismiss, the allegations contained in the complaint must be accepted as true

---

**6.**  Defendant Stinn was a director from 1993 until December 3, 2003.

**7.**  Demand was not made in any of the consolidated cases.

**8.**  Plaintiffs' allegations supporting the futility of demand are set forth in paragraphs 214 through 217 of the Verified Consolidated Shareholder Derivative Complaint [35]. While it is not clear that paragraphs 218 and

219 are alleged to support Plaintiffs' demand futility position, the Court has considered these allegations, as well as the totality of Plaintiffs' allegations, in its consideration of the motion to dismiss.

**9.**  In the alternative, Defendants request this Court stay this action pending resolution of the related federal securities class action. *See* footnote 5, *supra*.

and the facts and all inferences must be construed in the light most favorable to the plaintiff. *See Hawthorne v. Mac Adjustment, Inc.,* 140 F.3d 1367, 1370 (11th Cir.1998). In all cases, a plaintiff must not simply make bare assertions of legal conclusions. "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis,* 297 F.3d 1182, 1188 (11th Cir.2002).

### B. *Failure to Make a Demand on Friedman's Board of Directors*

Because demand on the directors is a predicate to an action brought derivatively, the Court must decide initially whether demand here was excused. Defendants argue that Plaintiffs are barred from suing derivatively because they did not first make a demand on Friedman's Board of Directors. Delaware law provides that directors, rather than shareholders, manage the business affairs of a company; an aggrieved shareholder must exhaust intracorporate remedies and demand that the board of directors take the desired action, or, alternatively, plead that demand is excused because it would be futile. *See Stepak v. Addison,* 20 F.3d 398, 402 (11th Cir.1994). This policy is embedded in Rule 23.1 of the Federal Rules of Civil Procedure which requires a plaintiff in a derivative action to "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors ... and the reasons for the plaintiff's failure to obtain the action or for not making the effort." Fed.R.Civ.P. 23.1. "The heightened pleading standard further reinforces the notion that a shareholder derivative suit is an extraordinary procedural device, 'to be used only when it is clear that the corporation will not act to redress the alleged injury to itself.'" *Stepak,* 20 F.3d at 402 (quoting 7C Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1831, at 96 (2d ed.1986)). Because Friedman's is a Delaware corporation, Delaware law governs whether failure to make a demand on the Board will be excused. *See Stepak,* 20 F.3d at 402; *In re AFC Enters., Inc. Derivative Litig.,* 224 F.R.D. 515, 518 (N.D.Ga.2004) ("Although the [Rule 23.1] pleading requirement is a matter of federal procedure, whether demand on the corporation would have been futile is a matter of [ ] state law.").

■ "[T]he demand requirement is a recognition of the fundamental precept that directors manage the business and affairs of corporations." *Aronson v. Lewis,* 473 A.2d 805, 812 (Del.1984). The question of demand futility "is inextricably bound to issues of business judgment...." *Id.* The proposition is that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Id.* (citations omitted). The rule "is of paramount significance in the context of a derivative action," including in determining demand futility. *Id.* That is, a party claiming demand on the directors would be futile must show the directors would not exercise business judgment in deciding whether to pursue claims based on a challenged transaction. Put another way, a plaintiff must show that "directors are under an influence which sterilizes their discretion" so that they are not deemed "proper persons to conduct litigation on behalf of the corporation." *Id.* at 814. Against this general backdrop have developed specific criteria to evaluate whether demand should be excused as futile.

Demand on a board of directors is excused as futile only if the "particularized factual allegations of [the] derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." *Rales v. Blasband,* 634 A.2d 927, 934 (Del.1993). "A director is considered interested where he or she will receive a personal financial benefit from a transaction that is not equally shared by the stockholders," or "where a corporate decision will have a materially detrimental impact on a director, but not on the corporation and the stockholders." *Rales,* 634 A.2d at 936. "To establish lack of independence, [plaintiff] must show that the directors are beholden to the [controlling person] or so under [his] influence that their discretion would be sterilized." *Rales,* 634 A.2d at 936 (quotation omitted); *Aronson,* 473 A.2d at 816 ("Independence means that a director's decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences."). Under Delaware law, the test stated in *Rales* for futility of demand is appropriate when plaintiff challenges a Board's inaction, instead of challenging a business decision of the Board. The parties agree the *Rales* test applies in this case. (Friedman's Mot. to Dismiss at 8; Pls.' Opp'n to Friedman's Mot. to Dismiss at 5.)

Here, Plaintiffs argue that none of the members of the Board are independent or disinterested such as to allow them properly to consider Plaintiffs' demand for the action Plaintiffs desire from the directors.[10] Specifically, Plaintiffs allege (i) Defendant Cohen dominated and controlled the Board, (ii) the directors would be unwilling to subject themselves to potential liability, and (iii) that each Defendant in some way is dependent or interested based on compensation or other personal benefit he received. Plaintiffs claim specific Director Defendant's independence is in doubt because (1) Brinkley was employed by Friedman's; (2) Defendants Brinkley and Pickup received financial benefits; and (3) Defendants Brinkley, Cay and Pickup had entangling relationships with other companies. Demand on the Board is excused in this case if Plaintiffs' particularized allegations raise a reasonable doubt regarding the independence or disinterestedness of a majority of the five-member Board. In considering whether Plaintiffs have alleged sufficient facts to show demand would be futile, the Court considers separately and collectively each of the grounds Plaintiffs advance to support their contention that demand would be futile.

### 1. *Domination and Control by Cohen*

Plaintiffs first claim that demand would be futile because Cohen controlled and dominated the Board. "To establish lack of independence, [Plaintiffs] must show that the directors are beholden to [Defendant Cohen] or so under [his] influence that their discretion would be sterilized." *Rales,* 634 A.2d at 936 (quotation omitted). Demand is futile where plaintiffs "allege particularized facts manifesting a direction of corporate conduct in

**10.** Plaintiffs claim they are required to demonstrate only that a majority of the five-person Board in place when this action was filed lack independence or disinterestedness to avoid the demand requirement. Defendants and the Court agree with this majority requirement and it is what the Court applied in its analysis.

such a way as to comport with the wishes or interests of the corporation (or persons) doing the controlling." *Aronson,* 473 A.2d at 816 (quotation omitted).

Plaintiffs claim Cohen controlled the Director Defendants because he: (1) owned all of Friedman's Class B stock; (2) placed nominees on the Board; (3) removed a director for unspecified reasons; (4) restated the corporate by-laws; and (5) rewarded loyal personnel with board and officer positions. (Pls.' Opp'n to Friedman's Mot. to Dismiss at 9; Compl. ¶¶ 21, 22, 25–26, 93, 95, 97–99, 106, 108–09.) Plaintiffs also claim "[t]he actions taken by the Board during this period ... speak[ ] volumes for the actual control exercised by Cohen," and that allegations "lead to the only reasonable inference that Cohen dominated and controlled the entire Friedman's Board for the personal benefit of his affiliated company." (Pls.' Opp'n to Friedman's Mot. to Dismiss at 10.)

The Court notes initially that a significant portion of the conduct purportedly evidencing Cohen's control and domination of the Board occurred after the Plaintiffs' first Shareholder Verified Derivative Complaint was filed on December 9, 2003. (*See* Compl. ¶ 95 (alleging on May 5, 2004, Cohen removed Defendant Cay, restated the by-laws and named five new directors).) Plaintiffs do not explain how such post-filing conduct demonstrates demand was futile at the time the initial complaint was filed. Assuming this conduct is relevant to the demand futility analysis, the Court finds these allegations fail the test of particularity required under Rule 23.1 and Delaware law.

While Plaintiffs have alleged Defendant Cohen's alleged authority to act, they do not allege how the restatement of by-laws or the appointment of directors alleged influenced or had the capacity to influence director discretion or independence. *See Aronson,* 473 A.2d at 816 ("The personal-selection-of-directors allegation stands alone, unsupported. At best it is a conclusion devoid of factual support."). In fact, Plaintiffs have failed even to describe the by-laws that were changed or the circumstances of the director appointments. The remaining allegations of Cohen's ownership of all of Friedman's Class B stock, his placement of nominees on the Board, rewarding of loyal personnel with board and officer positions, and the fact the Board took particular actions with regards to Crescent, are each alone, or in combination, insufficient to establish such control and domination of the Board to render demand futile.[11] There simply is insufficient particularity to demonstrate the import or effect of the matters alleged. The innuendo embedded in the allegations is not enough to meet the Plaintiffs' pleading obligations and existing case law discredits the sufficiency of what has been asserted in the Complaint.

The Delaware Supreme Court's decision in *Aronson* is instructive. In *Aronson,* the court found "even proof of majority ownership of a company does not strip the directors of the presumptions of independence, and that their acts have been taken in good faith and in the best interests of the corporation. There must be *coupled with the allegation of control such facts as*

---

**11.** That Cohen has "significant control over [the] business, policies and affairs" of Friedman's does not inform the Court's analysis of the directors' independence absent particularized allegations of his actual influence on the individual directors with regards to the alleg-

edly improper transactions. Plaintiffs have failed to allege control by Defendant Cohen of the sort which even suggests it would cause other directors to refuse to act independently or in the best interests of Friedman's.

*would demonstrate that through personal or other relationships the directors are beholden to the controlling person."* *Aronson,* 473 A.2d at 815 (emphasis added). The court explicitly rejected plaintiff's contention that the controlling person's selection of board members affects their independence. "[I]t is not enough to charge that a director was nominated by or elected at the behest of those controlling the outcome of a corporate election. That is the usual way a person becomes a corporate director. It is the care, attention and sense of individual responsibility to the performance of one's duties, not the method of election, that generally touches on independence." *Id.* at 816. The court also found the Board's actions did not establish the control person's domination of the Board because plaintiff did not establish a causal link between the alleged control and the challenged action. *Id.* As in *Aronson,* Plaintiffs' allegations of Cohen's alleged control[12] do not demonstrate sufficient "control and domination to overcome the presumption of board independence, and thus render demand futile." *Id.*

### 2. Exposure to Liability

■ Plaintiffs next argue it would be futile to require the Director Defendants to pursue Plaintiffs' claims because each of them risks personal liability for the conduct alleged by Plaintiffs. A director is considered "interested" when a corporate decision will have a materially detrimental impact on a director which is not shared by the corporation and the stockholders. "The 'mere threat' of personal liability in the derivative action does not render a director interested; however, a 'substantial likelihood' of personal liability prevents a director from impartially considering a demand." *Seminaris v. Landa,* 662 A.2d 1350, 1354 (Del.Ch.1995). Put another way, Plaintiffs argue that because Plaintiffs allege the Director Defendants might be liable for the conduct alleged, it would be futile to ask them to pursue the claims. Delaware courts frequently reject this "bootstrap argument" that demand is excused because directors face potential liability in the impending action because "[i]ts acceptance would effectively abrogate Rule 23.1 and weaken the managerial power of directors." *Aronson,* 473 A.2d at 818. Because derivative actions are claims against officers and directors of a company, if this ground for futility were allowed, a demand virtually always would be futile.

Plaintiffs attempt to refine their allegations by naming two sources of personal liability that purportedly impact the Director Defendants' independence. First, Plaintiffs argue each Director Defendant personally signed SEC filings containing allegedly misleading financial statements, and each has been named as a defendant in a federal securities class action arising from the same operative facts.[13] (Pls.' Opp'n to Friedman's Mot. to Dismiss at 16.) Second, Plaintiffs state, in conclusory terms, that the "Director Defendants' liability coverage will not protect the Director Defendants in this derivative suit...." (*Id.*)

Although Plaintiffs claim "Defendants' actions expose them to the potential of

---

**12.** Conclusory assertions that Cohen dominated and controlled the directors do not meet the particularity requirements. *See Aronson,* 473 A.2d at 816.

**13.** Plaintiffs also argue Defendants Pickup, Cruickshank and Parshall served on the Audit Committee and were charged with overseeing the accuracy of the Company's financial statements.

strict liability with regard to claims asserted by shareholders arising from the secondary offering completed during the Relevant Period" because they signed SEC filings, Plaintiffs have not analyzed the Director Defendants' potential liability, or available defenses, in the related action.[14] There is no allegation in the Complaint in this case asserting, or even suggesting, a substantial likelihood that the Director Defendants are liable for any claim alleged. Plaintiff in *Seminaris*, like Plaintiffs here, claimed the directors were interested because of potential liability from related federal lawsuits. 662 A.2d at 1354–55. The *Seminaris* court found the plaintiff had failed to allege particularized facts that create reasonable doubt that the directors in that case were disinterested or independent; rather, the court found plaintiff's argument "a slightly altered version of the discredited refrain—'you can't expect directors to sue themselves.'" *Id.* at 1355 (citation omitted). The court also found "plaintiff has failed to demonstrate that the directors risked increasing their exposure to personal liability or criminal sanctions in the related actions if they pursued plaintiff's claims." *Id.* Plaintiffs' Complaint here suffer from the same failures. Plaintiffs have failed to allege with particularity facts demonstrating the Director Defendants face liability in the related action, or, more importantly, risk increasing their liability in the related action if they pursued the claims asserted by Plaintiffs in this case.

Plaintiffs similarly fail to plead particularized facts that the Director Defendants' potential liability in this derivative suit prevents them from acting in a disinterested and independent manner. Plaintiffs' arguments are impermissibly conclusory[15] because they fail particularly to identify the conduct on which the Director Defendants' liability is premised.[16] (*See* Pls.' Opp'n to Friedman's Mot. to Dismiss at 16.) The court's reasoning in *In re Baxter Int'l, Inc. Shareholders Litigation* applies here. 654 A.2d 1268, 1270 (Del.Ch.1995). In *In re Baxter Int'l, Inc.*, the company's certificate of incorporation exempted directors from liability to the full extent permitted by Delaware law. The court found that in such situations, "the risk of liability does not disable [directors] from considering a demand fairly unless particularized pleading permits the court to conclude that there is a substantial likelihood that their conduct falls outside the exemption." *Id.* In granting defendants' motion to dismiss for failure to comply with Rule 23.1, the court found plaintiff's claim against the directors was conclusory and this was not that "rare case where the circumstances are so egregious that there is a substantial likelihood of liability." *Id.*

---

14. In the securities litigation, the Director Defendants are defendants only with respect to the Section 11 claims. They argued that the facts alleged in the Complaint alone support that they are entitled to the statutory defense available to them under 15 U.S.C. § 77k(b), and that the Section 11 claims against them should be dismissed. These arguments undercut significantly that Plaintiffs here can meet the "substantial likelihood" of liability standard that applies to a demand futility analysis.

15. For example, Plaintiffs allege "In order to bring this suit, all of the directors of Friedman's would be forced to sue themselves and persons with whom they have extensive business and personal entanglements, which they will not do, thereby excusing demand." (Compl.¶ 217(j).)

16. In fact, the Director Defendants are not the target of the fraud claims in the securities litigation. Their liability, if any, is alleged under Section 11.

at 1271. Because Plaintiffs in this case have failed to allege particularized allegations that raise the Director Defendants' potential liability from a mere threat to a substantial likelihood of personal liability, (*see* Pls.' Opp'n to Friedman's Mot. to Dismiss at 16), Plaintiffs have failed to plead with the requisite particularity that the Director Defendants lack independence due to their exposure to personal liability. *See Seminaris*, 662 A.2d at 1355 ("The particularized facts of the complaint do not describe such egregious conduct by the directors that they face a substantial likelihood of liability due to their failure to prevent [ ] misrepresentations."). The Court now turns to Plaintiffs' arguments regarding the individual Director Defendants.[17]

### 3. *Defendant Brinkley's Employment with Friedman's*

■ Plaintiffs contend Defendant Brinkley lacks independence because his employment with Friedman's renders him "beholden" to Cohen and "so under [his] influence that [his] discretion would be sterilized." *Rales*, 634 A.2d at 936. (Pls.' Opp'n to Friedman's Mot. to Dismiss at 10–11.) Plaintiffs allege Defendant Brinkley's principal occupation is his employment with Friedman's, in which he earned in excess of $1.6 million and received options for more than 100,000 shares of Company stock. (Compl.¶ 217(e).) Plaintiffs contend Defendant Brinkley is not independent because the Compensation Committee, which determined his compensation, was comprised of Director Defendants Cruickshank, Pickup and Parshall,

(*id.*), and because Friedman's admitted in a Prospectus filed with the SEC on September 19, 2003, that Defendant Cohen has "the power to appoint new management. . . ." (Compl.¶ 217(a); Pls.' Opp'n to Friedman's Mot. to Dismiss at 11.)

These allegations fall significantly short of the particularity required to show this director's interest. These allegations at most hint at the role or influence of Defendants Cruickshank, Pickup and Parshall on the Compensation Committee. The allegations are impermissibly general and conclusory.

Plaintiffs' allegations that Cohen, as controlling shareholder, was in a position to exert considerable influence over Defendant Brinkley appear to be uncontested. The question is whether these allegations are enough. In *Rales*, the Delaware Supreme Court found reasonable doubt as to whether the company's President and Chief Executive Officer, who received $1 million per year in salary, was an independent director because the Chairman of the Board and Chairman of the Executive Committee were "in a position to exert considerable influence over [the director]." *Rales*, 634 A.2d at 937. Here, Friedman's Prospectus states Defendant Cohen has the power to appoint new management, and Plaintiffs' allegations directly implicate Defendant Cohen's interests. Although a close call, viewing the allegations in the light most favorable to Plaintiffs, the Court concludes "there is a reasonable doubt that [Defendant Brinkley] can be expected to act independently considering his substantial financial stake in maintaining his cur-

---

**17.** Plaintiffs have not asserted a basis for questioning Defendants Cruickshank and Parshall's independence other than those which apply to all Director Defendants discussed above. (Pls.' Opp'n to Friedman's Mot. to Dismiss at 7–16.) For the reasons stated above, Plaintiffs have failed to plead sufficiently these directors were not independent or disinterested.

rent offices." *Id.*[18]

#### 4. *Defendant Pickup's Receipt of Financial Benefits*

■ "A director is considered interested where he or she will receive a personal financial benefit from a transaction that is not equally shared by the stockholders." *Rales,* 634 A.2d at 936. Plaintiffs claim their allegations raise a reasonable doubt regarding whether Defendant Pickup, due to the $30,000 bonus he received as Audit Committee Chairman in connection with the Company's August 2002 credit facility refinancing and investment in Crescent, was disinterested. (Pls.' Opp'n to Friedman's Mot. to Dismiss at 11; Compl. ¶ 29.) This allegation is not enough to find he is not disinterested or independent.

Plaintiffs' allegations regarding Defendant Pickup's receipt of $30,000 do not raise reasonable doubt as to his independence. First, the financial benefit allegedly obtained by Defendant Pickup was not related to any action challenged by Plaintiffs in these proceedings. Plaintiffs' allegations of GAAP violations involving Crescent regard the Company's alleged failure to properly and timely write down the Company's investment in Crescent. (Compl.¶ 129.) In contrast, Defendant Pickup allegedly received $30,000 in connection with the Company's August 2002 credit facility refinancing and investment in Crescent. (Compl.¶ 29.) Defendant Pickup's alleged receipt of benefits is not tied to the conduct about which Plaintiffs complain and without a particularized connection that the payment was related, directly or inferentially, to financial statements and reporting upon which Plaintiffs' claims are based, there is no basis for finding Defendant Pickup was not disinterested. *See Rales,* 634 A.2d at 933 (directorial interest exists when director receives financial benefit "from the challenged transaction"). Second, Plaintiffs' characterization of the $30,000 payment as a "bonus" paid "in exchange for" approving the investment in Crescent simply is not supported by the facts alleged. The Complaint alleges "Friedman's paid Pickup $30,000 as Chair of its Audit Committee in connection with the Company's August 2002 credit facility refinancing and investment in Crescent." (Compl.¶ 29.) The Complaint does not allege with particularity, or otherwise, that the payment was in return for approving the transaction. Plaintiffs simply allege that Defendant Pickup was paid for the work he performed. The Complaint does not allege whether the payment was extraordinary for the professional services rendered by Defendant Pickup so as to call into question his independence. Plaintiffs have failed to allege with particularity sufficient facts to raise a reasonable doubt as to Defendant Pickup's disinterestedness on the basis of his receipt of financial benefits.

#### 5. *Defendant Pickup's Entangling Relationships with other Affiliated Companies*

■ Plaintiffs claim Defendant Pickup, a director of Friedman's until his death in April 2004, could not be expected to base his decision "on the corporate merits of the subject before the board rather than extra-

18. Because the Court finds reasonable doubt as to Defendant Brinkley's independence because of his employment with Friedman's, the Court will not address Plaintiffs' arguments that Defendant Brinkley was interested due to personal financial benefits and entangling business relationships. (*See* Pls.' Opp'n to Friedman's Mot. to Dismiss at 11–15.)

neous considerations or influences," because he has a "long standing employment relationship[ ] with Cohen controlled companies, and serve[d] on multiple Cohen controlled boards." (Pls.' Opp'n to Friedman's Mot. to Dismiss at 15; Compl. ¶ 29.) *Aronson,* 473 A.2d at 816. Plaintiffs allege Defendant Pickup served as Vice Chairman of Crescent from December 1994 until February 1995, as President and CEO of Crescent from August 1993 through December 1994, and as a director of EZCorp, Inc.,[19] along with Defendant Brinkley. (Compl.¶ 29.) This conclusory allegation is insufficient.

Plaintiffs do not explain why there is reasonable doubt as to Defendant Pickup's independence because of positions he held prior to 1995 with affiliates of Friedman's. (Pls.' Opp'n to Friedman's Mot. to Dismiss at 15.) Plaintiffs challenge Defendants' conduct between January 26, 2000 and November 11, 2003, but do not allege particular facts tying Defendant Pickup's former positions with the alleged conduct occurring five years later. Plaintiffs do not explain how being a director of EZCorp, Inc., evidences his lack of independence. That Defendant Pickup had prior business relationships with Cohen through other Cohen-controlled companies, absent particularized allegations casting doubt on Defendant Pickup's independence, is insufficient to establish reasonable doubt as to Defendant Pickup's independence. *See Beam v. Stewart,* 845 A.2d 1040, 1051 (Del. 2004) (finding allegations of "business relationships before joining the board ... insufficient, without more, to rebut the presumption of independence"). While the allegations are shrouded in innuendo, the Complaint is devoid of any claim he did not act independently or with disinterest as he performed his function. To suggest that he is dependent and interested for the purpose of demand is unsupported conjecture.

### 6. *Defendant Cay's Business Relationship*

Defendant Cay was nominated to the Board by Cohen and served as a director of Friedman's until Cohen removed him, for unspecified reasons, on May 5, 2004. (Compl.¶ 26.) Defendant Cay is Chairman and CEO of Palmer & Cay, which provides insurance brokerage and employee benefits consulting services to both Friedman's and Crescent. (*Id.*) Plaintiffs claim Defendant Cay was not independent and disinterested because Cohen nominated him to the Board, and because of Defendant Cay's business relationships with the Company.

That Cohen nominated Defendant Cay to the Board is not sufficient to call into doubt Defendant Cay's independence. *See Aronson,* 473 A.2d at 816 ("[I]t is not enough to charge that a director was nominated by or elected at the behest of those controlling the outcome of a corporate election. That is the usual way a person becomes a corporate director. It is the care, attention and sense of individual responsibility to the performance of one's duties, not the method of election, that generally touches on independence."). Absent particularized allegations of Cohen's control of Defendant Cay or Cay's abdication of his duties, the Court does not find reasonable doubt as to Defendant Cay's independence. That Cohen removed Defendant Cay for unspecified reasons from

---

**19.** EZCorp, Inc., is an affiliate of Friedman's, and was allegedly part of the "web of deceit and fraud ... orchestrated by defendant Phillip E. Cohen." (Compl.¶ 4.)

the Board on May 5, 2004, indicates, if anything, a strained relation and discredits the claim he was "beholden" to Cohen.

▇ Plaintiffs argue Defendant Cay is not independent because his company provides insurance brokerage and employee benefits consulting services to both Friedman's and Crescent. (Compl. ¶ 26; Pls.' Opp'n to Friedman's Mot. to Dismiss at 15.) Plaintiffs, however, do not allege any specific facts establishing the terms of the relationship between Palmer & Cay and Friedman's and Crescent. They do not allege the services provided or whether the compensation for them was unfair. Plaintiffs fail to allege facts even suggesting that Defendant Cay could not consider a demand independently and free from extraneous influences. Plaintiffs cite *Steiner v. Meyerson,* No. 13139, 1995 WL 441999 (Del.Ch. July 19, 1995), and *Eichenholtz v. Brennan,* No. 88–515, 1989 WL 85616 (D.N.J. July 27, 1989), in support of their argument that a director is interested if he is affiliated with an entity having a business relationship with the subject corporation. In *Steiner,* the court found "a partner at a small law firm bringing in close to $1 million in revenues from a single client in one year may be sufficiently beholden to, or at least significantly influenced by, that client as to affect the independence of his judgment." 1995 WL 441999, at *10. Similarly, the *Eichenholtz* court, in finding outside directors were interested, found plaintiffs detailed the arrangements between the company and one director's law firm, which received nearly $75,000 in fees,

and another director's advertising firm, which received nearly $1 million in fees. 1989 WL 85616, at *13. The courts in those cases were presented with the types of particularized facts that are absent in this case. There is no allegation to show whether business generated by Defendant Cohen, or companies he controlled, accounted for income to Defendant Cay's firm that was even considered material to his business. The Court finds Plaintiffs have not alleged particularized facts creating reasonable doubt that Defendant Cay could act free from outside influence.

Based on the Court's careful review of the allegations of the Complaint, the Court concludes that Plaintiffs have failed to allege particularized facts, either in isolation or in their totality, creating reasonable doubt as to a majority of the directors' independence or disinterestedness to excuse the requirement that Plaintiffs make demand on the Board. In view of this conclusion, the Court is not required to address Defendants' remaining grounds on which they claim the Complaint should be dismissed.[20]

### C. *Leave to Amend*

Plaintiffs request leave to amend in the event the Court determines Plaintiffs have not pleaded demand futility adequately. (Pls.' Opp'n to Defs.' Mots. to Stay [51] at 3 n. 3.) Federal Rule of Civil Procedure 15(a) provides leave to amend "shall be freely given when justice so requires." "A district court need not, however, allow an

---

**20.** Defendants argue Plaintiffs' claims should be dismissed because Section 304 of the Sarbanes–Oxley Act, the basis for Plaintiffs' only claim brought under federal law, does not provide a private right of action. Although no court has ruled on this issue, this Court "is doubtful of the existence of a private right to sue under Section 304...." *See In re Cree, Inc. Sec. Litig.,* No. 1:03–00549, 2005 WL 1847004, *15 (M.D.N.C. Aug.2, 2005) ("Certain provisions of the Sarbanes–Oxley Act include an express private right of action; Section 304 does not.").

amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Bryant v. Dupree,* 252 F.3d 1161, 1163 (11th Cir.2001) (citation omitted). None of these factors mandate dismissal of Plaintiffs' Complaint with prejudice at this time and Plaintiffs may amend their Complaint. However, any amendment requested to be made shall be in a form to allow the parties and the Court to identify additional information alleged. Specifically, any amendment shall (i) incorporate by reference, in whole or in part, but without restating, the allegations of the Derivative Complaint and (ii) state those new allegations Plaintiffs seek to assert to supplement the allegations previously asserted. If the new allegations are in addition to allegations in the Derivative Complaint, Plaintiffs may indicate in the amendment the paragraph or paragraphs of the Derivative Complaint which the new allegations supplement or modify. The Court believes permitting an amendment in this form strikes the appropriate balance between efficiency, fairness, and the obligation of the Court to manage litigation before it.

### III. *CONCLUSION*

Accordingly,

**IT IS HEREBY ORDERED** that David B. Parshall's Motion to Dismiss the Consolidated Derivative Complaint [40, 41], the Former Outside Director Defendants' Motion to Dismiss Verified Consolidated Shareholder Derivative Complaint [46], and Defendants Bradley J. Stinn and Sterling B. Brinkley's Motion to Dismiss the Verified Consolidated Shareholder Derivative Complaint [63] are **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiffs shall file their amended complaint within thirty (30) days of entry of this Order, and Defendants shall file their motions to dismiss within thirty (30) days of the filing of the amended complaint.

**SO ORDERED,** this 7th day of September, 2005.